# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **FIRST MERIT BANK, N.A., et al.,** | |
| **Plaintiffs,** | **No. 15 C 01573** |
| v. | |
| **EARL TEETS, JR., et al.,** | **Magistrate Judge Mary M. Rowland** |
| **Defendants.** | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs request a determination of whether the crime-fraud exception to the attorney-client privilege applies to certain documents that Defendants claim are protected from discovery. Plaintiffs further contest the protection of twenty-one (21) specific documents on Defendants' privilege log. The parties consented to an *in camera* review, and the case was referred to the Magistrate Judge to conduct the review. (Dkt. 146). Having concluded the review, the Court finds that Plaintiffs have failed to make a *prima facie* showing that the crime-fraud exception to the attorney-client privilege applies to communications between Attorney Harry Stinespring III (Stinespring) and his clients. The Court further finds that fourteen (14) of the twenty-one (21) specific documents contested by Plaintiffs are not protected by the attorney-client privilege or work product doctrine and must be produced.

# I. BACKGROUND

In 2007, Defendants Earl Teets, Jr., and Warren Wolschlager were part of a group of five individuals that formed JAC Reed Road, LLC, an entity created to develop six parcels consisting of 26 acres of land. (Dkt. 154 at 4). JAC Reed Road, LLC entered an initial construction loan for the project with Midwest Bank and Trust Co. for approximately $7,600,000.00. The loan was funded through a construction escrow and was personally guaranteed by Teets, Wolschlager, and the other individual investors. *Id*. On August 20, 2009, the construction loan matured and JAC Reed Road, LLC was declared in default because of its failure to pay the loan balance in full upon its maturity. *Id*. On September 25, 2009, Midwest Bank and Trust Co. commenced a mortgage foreclosure case with regard to the development. *Id*. On October 13, 2009, JAC Reed Road, LLC closed on the sale of one of its six completed commercial sites for $1.7 million. In 2010, Midwest Bank and Trust Co. was closed and First Merit Bank substituted in as the plaintiff in the foreclosure case. On February 4, 2014, Plaintiff obtained a Judgment of Foreclosure and Sale on the remaining five parcels. (Dkt. 154 at 5).

Plaintiffs allege that Stinespring, the attorney whose documents are at issue, was involved in the matters giving rise to Plaintiffs' claims. (Dkt. 148-1 at 1). Specifically, Plaintiffs allege that Defendants Teets and Wolschlager, judgment debtors of Plaintiff First Merit Bank, engaged in fraudulent transfers to their family members and companies created by their wives for the sole purpose of holding assets and avoiding judgment. (Dkt. 148-1 at 1).

On May 7, 2015, Earl Teets filed a Chapter 7 bankruptcy petition, currently pending in the U.S. Bankruptcy Court for the Northern District of Illinois. *In re Earl Teets, Jr.*, BK No. 15-16266 (N.D. Ill. May 7, 2015). On July 7, 2015, at the bankruptcy meeting of creditors, conducted pursuant to 11 U.S.C. § 341, Teets testified that a number of the transfers alleged in the Amended Complaint to be fraudulent were completed on the advice of Stinespring. *See* 341 Meeting Transcript (Dkt. 148-3 at 21, 60) ("Why did you qui[t] claim that property to your wife" "it was something that my lawyer [Harry Stinespring] . . . said that I should do"; "And did you do it because your attorney, Harry Stinespring, told you to do it?" "Yes, he did").

On August 9, 2015, Plaintiffs served Stinespring with a subpoena to produce documents. Defendants asserted either work product or attorney-client privilege to 282 documents, and the parties agreed to this *in camera* review. (Dkt. 148-1 at 20; Dkt. 148-5).

## II. DISCUSSION

### A. *In Camera* Review

It is axiomatic that federal courts recognize both the attorney-client privilege and the work product doctrine. *See, e.g., United States v. BDO Seidman, LLP*, 492 F.3d 806, 814–15 (7th Cir. 2007); *In re Special Sept. 1978 Grand Jury (II)*, 640 F.2d 49, 62 (7th Cir. 1980). The attorney-client privilege protects communications made (1) in confidence; (2) in connection with the provision of legal services; (3) to an attorney; (4) in the context of an attorney-client relationship. *BDO Seidman*, 492 F.3d at 815. The purpose of the attorney-client privilege is to "encourage full

disclosure by clients to their attorneys so that clients can obtain fully informed legal advice." *Apotex Corp. v. Merck & Co.*, 229 F.R.D. 142, 146 (N.D. Ill. 2005). There are circumstances in which a document loses these protections, such as where a document "relate[s] to communications made in furtherance of a crime or fraud"— the so-called "crime-fraud exception." *Vardon Golf Co. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 535 (N.D. Ill. 2003).

To make out a *prima facie* case that the crime-fraud exception applies to a particular document, a party will ask the court to review that document *in camera*. The showing a party must make to justify an *in camera* review is less stringent than the showing it must make to present a *prima facie* case that the crime-fraud exception applies. *See Abbott Labs. v. Andrx Pharm., Inc.*, 241 F.R.D. 480, 489 (N.D. Ill. 2007). However, before engaging in an *in camera* inspection of a potentially privileged document, "the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person . . . that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *United States v. Zolin*, 491 U.S. 554, 572 (1989) (internal quotation omitted). Once the proponent of the review makes a sufficient showing, "the decision whether to engage in *in camera* review rests in the sound discretion of the district court." *Id.*

Plaintiffs rely on Teets's testimony that he relied on Stinespring's legal counsel in conducting the monetary and land transfers. Plaintiffs present no evidence that Wolschlager relied on Stinespring's counsel. This strikes the Court as significant

since the vast majority of the documents requested for this Court's review concern Stinespring's representation of Wolschlager. However, this preliminary showing is not applicable if, as here, the privilege holder voluntarily offers the contested documents for *in camera* review. *See LRC Electronics, Inc. v. John Mezzalingua Associates, Inc.*, 974 F. Supp. 171 (N.D. N.Y. 1997). Since the parties have agreed to an *in camera* review, the Court will assume that there is enough evidence to provide a "good faith belief by a reasonable person" that a review may reveal evidence establishing the crime-fraud exception.

## B. Plaintiffs have not made a *prima facie* showing that the crime-fraud exception applies.

The party seeking to invoke the crime-fraud exception must "present *prima facie* evidence that 'gives colour to the charge' by showing 'some foundation in fact' [. . .]." *BDO Seidman*, 492 F.3d at 818 (quoting *United States v. Al–Shahin*, 474 F.3d 941, 946 (7th Cir. 2007)).[1] While the evidence in the record need not rise to the level of proving fraud, there must be facts that "give color" to the charge of fraud. *See also Sound Video Unlimited v. Video Shack, Inc.*, 661 F. Supp. 1482, 1486 (N.D. Ill. 1987) (party seeking to abrogate the privilege must establish a connection between the "communications at issue and the alleged offense"). Finally, it is the intent of the client, rather than the intent of the lawyer, that governs whether the crime-

---

[1] Courts have reached different conclusions about the showing required to make a *prima facie* case. *See Matter of Feldberg*, 862 F.2d 622, 625-26 (7th Cir. 1988) (noting differences). The Seventh Circuit requires evidence sufficient to require an explanation by the party asserting the privilege. *Id.* If the Court finds the explanation satisfactory, then the privilege remains. *Id.*

fraud exception applies. *United States v. Boender*, 719 F. Supp. 2d 951, 954 (N.D. Ill. 2010) *aff'd,* 649 F.3d 650 (7th Cir. 2011) (affirming on other grounds).

The Court has reviewed all 282 documents to determine if there is any evidence of a *prima facie* case to invoke the crime-fraud exception. These documents involved Stinespring's representation of Wolschlager and to a lesser extent Stinespring's representation of Earl Teets and his wife Sharon Teets. The vast majority of the correspondence consists of e-mail exchanges and written correspondence between Wolschlager and Stinespring from 2006-2014 (approximately 130 documents). With respect to Stinespring's limited representation of Earl Teets and Sharon Teets, there are only a handful of communications (9 in total) from 2012-2014.[2] The remainder of the documents reviewed include draft contracts, operating agreements, settlement statements, warranty deeds, and similar documents related to estate planning. Additionally, there are a few pages of handwritten notes.

The Court carefully reviewed each document and considered whether it contains any evidence of efforts to conceal property, efforts to intentionally defraud creditors, or efforts to transfer property with the intent to defraud creditors. The Court focused on the intent of the client, as outlined above, but considered the entirety of all documents and communications. None of the documents show any evidence of fraud. The documents mostly consist of routine legal advice and draft documents. Several of the documents were dated before JAC Reed Road, LLC was even formed

---

[2] The e-mails between Stinespring and Teets are dated 6/22/2014 (1520-1521); 10/10/2015 (2815); 4/4/2014 (2920); 8/4/2014 (2932); 10/15/2014 (2937-2943); 2/7/2012 (3620); 4/12/2014 (3704); 8/2014 (3713); 9/4/2014 (3716).

(pre-2007)–the entity which gave rise to the deficiency judgment at issue in this action. Those communications reveal no fraud or intent to commit a fraud. The remainder of the documents also do not evidence intent to commit fraud. *Babych v. Psychiatric Sols., Inc.*, 271 F.R.D. 603, 610 n.5 (N.D. Ill. 2010) (the crime-fraud exception does not apply when the party seeking waiver failed to allege how the communications might have been in furtherance of fraud).

After reviewing each of the documents *in camera*, there is simply no basis for this Court to find that any of the communications were "intended to facilitate or conceal the alleged crime or fraud." *Abbott Labs.*, 241 F.R.D. at 488. After carefully considering the evidence and argument, the Court concludes that Plaintiffs have not presented *prima facie* evidence that gives color to the charge of fraud by showing some foundation in fact. Accordingly, Plaintiffs' request to compel production under the crime-fraud exception is denied.

## C. Defendants' Privilege Claims for Specific Documents

Plaintiffs argue that according to the descriptions of twenty-one (21) of the documents listed on the privilege log, the documents are not entitled to protection. (Dkt. 148-1 at 4). As stated *supra,* the attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice. *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). The privilege belongs to the client, although an attorney may assert the privilege on the client's behalf. *Id.*

The work product doctrine is broader than the attorney-client privilege and protects from discovery "documents and tangible things that are prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(A); *United States v. Nobles*, 422 U.S. 225, 238 (1975); *United States v. Smith,* 502 F.3d 680, 689 (7th Cir. 2007). This protection does not apply if the prospect of future litigation was remote at the time the document was created. *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983). "The mere fact that litigation does eventually ensue does not, by itself, cloak materials prepared by an attorney . . . the privilege is not that broad." *Id.* Instead, the work product doctrine applies only when there was "an identifiable prospect of litigation because of specific claims that have arisen." *Baxter Travenol Labs., Inc. v. Abbott Labs.*, No. 84 C 5103, 1987 WL 12919, at *10 (N.D. Ill. June 19, 1987). To identify work product, courts are directed to determine "whether in light of the factual context the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976–77 (7th Cir. 1996) (citation and internal quotation marks omitted). Materials created in the ordinary course of business which may have the incidental effect of being helpful in litigation are not privileged under the work product doctrine. *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 217 (N.D. Ill. 2013).

In this case, Plaintiffs specifically challenge the inclusion of 21 documents on the privilege log. The following documents do not satisfy the work product doctrine, as there is no indication that they were prepared in anticipation of litigation: a blank personal financial statement form (No. 468-70) and a blank income and asset form

(No. 2975-77). Because Defendants assert those two documents are only protected by the work product doctrine, they shall be produced. The Court finds that the following documents were prepared in anticipation of litigation and need not be produced: a chart of Teets's Real Estate Investments as of February 14, 2012 (No. 1571) and three filed citation notices with handwritten notes (Nos. 2959-66, 2967-74, 3339-49).

The remaining documents are purportedly protected by the Attorney/client privilege or "Attorney/client and work product":

Nos. 281 & 177-80: "Draft closing statement for 120 S. 14th Street, St. Charles" and "Unsigned settlement statement for the purchase of 530 Woodland Drive, Crystal Lake by Wolschlager LLC." There is no indication that these documents satisfy the attorney/client privilege. The burden is on the party asserting the privilege. It does not appear from the document that any legal advice was sought, any communication occurred, or any of the other elements of the attorney-client privilege were satisfied. Defendants shall produce these documents.

Nos. 505, 598, 599, 564-80, 581-96, 600-05, 606-11, 612-13, 617-18: These documents are estate planning documents and include a facsimile assignment of beneficial interest form; Declarations of Gwendolyn Wolschlager and Warren Wolschlager; Gwendolyn Wolschlager's Trust and Will; Warren Wolschlager's Trust and Will; and two Power of Attorney forms. There is no indication that these documents fall within the attorney/client privilege. The privilege log does not indicate that any legal advice was sought, communications occurred, or any of the

other elements of the privilege were satisfied. Again, the burden is on the proponent of the privilege. Defendants shall produce these documents.

<u>No. 1886</u>: "Email between Warren Wolschlager and Bryan Firth." A review of the document reveals that the correspondence is an e-mail within an e-mail. Mr. Wolschlager forwarded an e-mail exchange with Mr. Firth to his attorney, Mr. Stinespring. Therefore, the actual correspondence, which is between Mr. Wolschlager and his attorney, falls within the attorney-client privilege. This document need not be produced.

<u>No. 2592</u>: "Correspondence from Harry Stinespring to Heritage Title." This is a letter from Mr. Stinespring to the title company. No privilege protects this document. Defendants shall produce this document.

<u>Nos. 471-73, 534-36</u>: These documents are spreadsheets of commercial loan documents prepared for members of the Wolschlager family. These spreadsheets appear to have been created by Mr. Stinespring for his clients as legal advisor of the family's estates. The Court finds that these documents fall within the privilege. The Court notes, however, that Document No. 534 was not produced to the Court and therefore it cannot make a determination on that specific document.

### III. CONCLUSION

After reviewing each of the documents *in camera*, the Court finds that Plaintiffs have not presented *prima facie* evidence that the crime-fraud exception to the attorney-client privilege applies. However, the Court did find that Defendants failed

to meet their burden of establishing that fourteen (14) of the documents contained on the privilege log are entitled to protection. Defendants shall produce those 14 documents by December 15, 2015.

E N T E R:

Dated: December 8, 2015

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge